PETER J. LOFGREN *et al. vs.* CARL PETERSON *et al.*

Submitted on briefs May 9, 1893. Reversed July 31, 1893.

**Certain Alleged False Statements Held to be Material.**

Certain representations alleged to have been made by defendants, in respect to the location and price of real property, *held* material representations of fact.

**False Representations, Relied upon, and Contract Rescinded.**

And where, in the course of negotiations for the exchange of property between parties interested therein, material representations of fact are made by one of them, who knows the facts, to the other, who is ignorant thereof, under circumstances calculated to mislead him instead of put him upon inquiry, and such representations are false, and relied on by the latter to his prejudice, an action will lie.

Appeal by plaintiffs, Peter J. Lofgren and Frank A. Lofgren, from an order of the District Court of Hennepin County, *William Lochren,* J., made November 2, 1892, denying their motion for a new trial.

The defendant, Carolina Peterson, and the plaintiffs on March 8, 1892, had a contract with Thomas Brian by which he was to convey to them jointly Lot four (4) in West Crocus Hill, Lot nine (9) in West Crocus Hill Plat B., and eight lots in Block one (1) in Minnesota Transfer, all in the City of St. Paul, and also to make and deliver to them his note for $10,000. Carolina Peterson owned one half and the plaintiffs the other half of all rights under this contract. Carl Peterson was the husband of Carolina, and her agent in business. The plaintiffs and Peterson and wife were intimate friends, and had been for many years. Plaintiffs had never seen the lots or any of them. They intrusted the management of their interests to the husband, believing he would treat them fairly.

The complaint alleged that Peterson and wife falsely and deceitfully represented to plaintiffs that the two Crocus Hill lots were worth no more than $4,000, and were situated far out in the suburbs of St. Paul, in a bad location. That these representations were untrue, and that Peterson and wife knew it, but plaintiffs were ignorant in the matter, and believed the representations, and were thereby induced to sell to Peterson their half interest in the

two Crocus Hill lots for $2,000, and consented that Brian deed them to him alone. The other lots were deeded to the parties jointly, the plaintiffs each taking a quarter interest. Brian's note for $10,000 was also given to the parties properly. The complaint also alleged that the Crocus Hill lots were in fact "two of the most beautiful residence lots in St. Paul and centrally located, and worth $24,000," and that defendants on March 31, 1892, mortgaged them for $6,500 to a Trust Company. Plaintiffs asked judgment that defendants convey to them a half interest in these two lots subject to half of this mortgage, and for $3,250, their half of the money borrowed of the Trust Company less the $2,000 received. Defendants denied making the false representations, and alleged that plaintiffs were not deceived, but well knew all the facts regarding the two lots.

The issues came to trial September 21, 1892. The defendants moved the court to dismiss the action on the ground that the complaint did not state facts sufficient to constitute a cause of action. The motion was granted. Plaintiffs moved for a new trial, but were denied, the Judge saying:

"The general allegation that said Crocus Hill lots were far out in the suburbs of St. Paul is but a vague relative account of them, and not a misdescription so far as appears from anything in the complaint. A lot a little way out on Summit Avenue might to the minds of different men tally with the allegations. The statement that they were in a bad location is the vaguest general statement of an opinion. Had they been represented as in a marsh, or as having special disreputable or unwholesome surroundings that would have been at least tangible. So as to their value. The complaint alleges that to have been $24,000, but does not allege that defendants knew them to be of that or of any other particular value, nor any facts from which such knowledge is inferable; for that is not shown by the fact that nearly a month later the defendants borrowed $6,500 upon the security of these lots. The defendants were purchasers of the plaintiffs' interest in these lots. Their representations were as to their value, and as to matters affecting the value of the property they were offering to purchase. A purchaser is expected to depreciate the value of property under such circumstances, and has the legal right to do so; and it is the folly

of the vendor if he relies on such representations. So far as appears, there was nothing to prevent the plaintiffs from examining these lots and their location, and forming their own judgment as to their value. The only ground giving any color of right to the plaintiffs' prayer for relief is the claim that when defendants purchased of them these two lots, Carl Peterson was plaintiffs' agent intrusted with their interest in negotiating the exchange with Brian. But it is not shown that Carl Peterson was still agent. His agency apparently only covered the negotiations for exchange with Brian. These negotiations, and the alleged agency, ended when the written contract for exchange with Brian was signed and delivered. There seems to me to be no sufficient reason set forth for excusing the plaintiffs from ordinary care and watchfulness in respect to their own interests in making the sale to the defendants."

*Benton & Molyneaux*, for appellants.

The theory of the complaint is that Carl Peterson occupied a confidential relation to the plaintiffs and abused the confidence reposed in him. He was acting as the agent of the plaintiffs, and he took advantage of the knowledge which it was his especial duty to acquire and impart to the plaintiffs, and by concealing from, and misrepresenting this knowledge to, plaintiffs, while acting as their agent, obtained an advantage to himself. It is the duty of an agent to be loyal to his principal, and not withhold from, or misrepresent to, him knowledge which he is employed to obtain, and any advantage which he may acquire thereby, equity will not allow him to enjoy. It was his especial duty to ascertain the value of the property he was trading his principals' property for, and truthfully inform them; but instead, he not only concealed the value, but misrepresented it, in order that he might get the property himself at low figures. While, as a rule, representations as to the value of property are to be deemed matters of opinion, and not of fact, as between strangers, this rule does not apply as between principal and agent when the agent is purchasing of his principal the subject of his agency. It is a rule of equity that if a fiduciary or confidential relation exists between the parties, representations of value made by the party holding the position of trust

or confidence, have the same effect as ordinary representations of fact. 1 Bigelow, Fraud, 267, 496; 1 Story, Eq. J. § 307; 2 Pomeroy, Eq. J. § 956; *Haven* v. *Neal*, 43 Minn. 315.

Where there is a confidential relation existing between parties, a presumption arises that the transaction brought to the notice of the court was effected through fraud by the party occupying the position of trust, and it is required of the party occupying the position of confidence, to show that his actions have been honest and honorable. *Fisher* v. *Bishop*, 108 N. Y. 25; *Tilleny* v. *Wolverton*, 46 Minn. 256; *Comstock* v. *Comstock*, 57 Barb. 453; *Cook* v. *Berlin Mill Co.*, 43 Wis. 433; *Hunsaker* v. *Sturgis*, 29 Cal. 142; *Rankin* v. *Porter*, 7 Watts, 387.

*Healy & Miller*, for respondents.

No relief can be granted the plaintiffs, as the complaint does not state facts sufficient to constitute a cause of action. The alleged fraud is not actionable. It appears by the pleadings that the contract sought to be rescinded was in fact and in legal effect a contract for the purchase and conveyance of real property, wherein plaintiffs were vendors and the defendant, Carl Peterson, was vendee, and that there was no fiduciary relation existing between the parties; but, on the contrary, they had an adverse interest and stood in the hostile relation of vendor and vendee. The alleged fraudulent representations go only to the value of the property. The general allegation that the Crocus Hill lots were far in the outskirts and suburbs of St. Paul is but a vague account of them, and not a misdescription. The allegation that they were in a bad location is equally as vague and merely the statement of an opinion. The defendants were the purchasers of the plaintiffs' interest in those lots. Their representations were as to their value and as to matters affecting the value of the property they were offering to purchase. A purchaser is expected to depreciate the value of the property under such circumstances. It is not alleged in the complaint that defendants, or either of them, used any fraud or device whatever to prevent the plaintiffs from making a full examination of the property in question and from thus ascertaining its location and value. It is apparent from the pleadings that the means of information as to the character and condition of the

land in question were equally open to all parties. It also appears from the pleadings that plaintiffs failed even to inquire of Brian about the property. Allegations of false representations, claimed to have been fraudulent, must be specific and clear. In this complaint they are noticeably vague, general and unsupported by statements as to matters of fact. *Columbia Electric Co.* v. *Dixon,* 46 Minn. 463; *Tretheway* v. *Hulett,* 52 Minn. 448; *Medbury* v. *Watson,* 6 Met. 246; *Homer* v. *Perkins,* 124 Mass. 431; *Gordon* v. *Butler,* 105 U. S. 553; 2 Addison, Torts, (Wood's Ed.) p. 124, § 1186; *Andrus* v. *St. Louis Smelting & Refining Co.,* 130 U. S. 643.

It appears from the complaint that Peterson's agency, apparently voluntary, is only alleged to cover the negotiations for the exchange with Brian. These negotiations and the alleged agency ended when the written contract for exchange with Brian was signed and delivered. It is also as clearly alleged that such representations and offer were made after the contract with Brian had been signed, and that such representations were not acted upon and accepted by plaintiffs until after the trust which Carl Peterson had assumed on behalf of the plaintiffs had been executed and had ceased.

VANDERBURGH, J. This action was brought to rescind a sale of lands, on the ground of fraud. It was dismissed at the trial for alleged insufficiency of the complaint. The complaint shows that on the 8th day of March, 1892, the appellants and Carolina Peterson, one of the defendants, owned the parcel of land therein described, alleged to be worth $150,000, and mortgaged for $45,000. On that day the parties hereto entered into a contract with one Thomas Brian, whereby they agreed to convey the land mentioned to him, in consideration of which, and certain covenants in respect thereto, Brian undertook and agreed to convey to them certain lots in the county of Ramsey, viz. lots 4 and 9, on West Crocus Hill, and other lots in the Minnesota Transfer Addition to St. Paul, and to execute his notes to them for $10,000, secured by mortgage on the first-described property. It is alleged that plaintiffs, by virtue of this contract, became entitled to a conveyance of an undivided half of the lands agreed to be conveyed by Brian; that the plaintiffs were entirely ignorant of the location, character,

and value of any of that property, and had never seen the same; that they had been on terms of intimacy and friendship with defendants for many years, and had full faith and confidence in their integrity and good faith, and that, in reliance thereon, they left to defendant Carl Peterson the whole management, negotiation, and consummation of the trade with Brian, believing he would deal justly and fairly with them; and that he acted in the matter in behalf of himself and Carolina Peterson, as well as for the plaintiffs. In the execution of the contract with Brian, it is shown that they induced the plaintiffs to accept a deed for an undivided half of the Minnesota Transfer lots, and to allow the Crocus Hill lots to be conveyed to defendants at a valuation of $4,000; the defendants to advance the money for their undivided half of such sum, the same to be applied on the joint indebtedness of the parties. The representations alleged to be fraudulent, by which plaintiffs claim they were induced to consent to the arrangement and conveyance above mentioned, were that the defendants fraudulently and untruthfully represented to plaintiffs that said two lots last named (Crocus Hill lots) were situated far out in the outskirts and suburbs of the city of St. Paul, and in a bad location, and were not worth more than $4,000, and were put into said trade (with Brian) at the sum of $4,000, and that such representations were made to enable the defendants to obtain the lots for themselves. That in fact all of the said representations made by said defendant Carl Peterson as to the value, location, and character of said lots in West Crocus Hill and in West Crocus Hill B were false, and were known to be false by said defendants at the time the same were made; and said representations made by said Carl Peterson as to the value of said lots in Minnesota Transfer addition to St. Paul greatly appreciated and exaggerated the value of the same, and were false, but that plaintiffs, having implicit confidence in said Carl Peterson, believed the said representations to be true, and relied upon the same, and were thus deceived and defrauded into allowing said defendants to obtain the title to said lot four (4) in West Crocus Hill, and said lot nine (9) in West Crocus Hill B. That in fact said lots in West Crocus Hill and West Crocus Hill B, instead of being worth no more than $4,000, were worth the sum of $24,000, and instead of being in

the outskirts and suburbs of said city of St. Paul, and in a bad location, were two of the most beautiful residence lots in the said city of St. Paul, and are centrally located in the same.

The representations as to the location of the lots, and the price at which they were put in the Brian contract, were representations of fact, and material; and as they are alleged to have been false, to the knowledge of the defendants, and relied on by the plaintiffs, they constitute actionable fraud. It is suggested that it was plaintiffs' duty to have examined the lots, and inquired into the price thereof, and that it was their own folly to have trusted a party with an adverse interest. But it appears that the defendant Carl Peterson enjoyed the confidence of the plaintiffs, and had been intrusted by them with the management of the negotiations for the exchange of the property. He might be presumed to have informed himself in respect to the material facts, and to have dealt faithfully with the plaintiffs in examining the property and consummating the trade; and we think the plaintiffs might reasonably rely upon his representations in respect thereto in the subsequent transaction between them. The facts were unknown to the plaintiffs, and were known to the defendant, and the representations were in positive terms, and were calculated to mislead them, instead of to put them upon inquiry. Bigelow, Frauds, (Ed. 1888,) 475. The complaint, therefore, stated a cause of action.

Order reversed.

(Opinion published 56 N. W. Rep. 44.)

